IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| BELLAIRE HARBOR SERVICE, LLC | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 5:14-cv-129 (Bailey) |
| GRAESTONE LOGISTICS LLC and FOUR RIVERS TOWING, LLC, | ) Electronically filed: October 1, 2014 ) ) ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

Plaintiff Bellaire Harbor Service, LLC, by its attorneys, Gompers, McCarthy & McClure and Metz Lewis Brodman Must O'Keefe LLC (*pro hac vice* application pending), files this Verified Complaint pursuant to Federal Rule of Civil Procedure 9(h) and Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## PARTIES

1. Plaintiff Bellaire Harbor Service, LLC ("Bellaire") is a Kentucky limited liability company with a principal place of business at 4102 Jefferson Street, Bellaire, Ohio 43906.

2. Defendant GraeStone Logistics LLC ("GraeStone") is a Kentucky limited liability company with a principal place of business at 24961A Burgett Lane, Robertsdale, Alabama 36567.

3. Defendant Four Rivers Towing, LLC ("Four Rivers") is a Kentucky limited liability company with a principal place of business at 24961A Burgett Lane, Robertsdale, Alabama 36567.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1333(1).

5. Venue is proper in this Court under Rules B and E of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## FACTUAL BACKGROUND

### A. The November 17, 2012 Bellaire-Four Rivers Barge Charter

6. On or about November 17, 2012, Bellaire and Four Rivers entered into a written Barge Charter pursuant to which Bellaire agreed to let and Four Rivers agreed to charter the merchant vessel M/V Russell T, Official Number 539180. A true and correct copy of the Barge Charter is attached hereto as Exhibit "A."

7. Four Rivers agreed, among other things, to "pay Hire to [Bellaire] for the use of said Vessel[ ] at the rate of $550.00 per day or part thereof."

8. Four Rivers further agreed that "[a]ny repairs, replacements or cleaning required to restore the Vessel[ ] to the pre-Charter condition except for repairs, replacements or cleaning related to reasonable wear and tear, shall be for the account of [Four Rivers.] . . ."

9. From time to time after the execution of the Barge Charter through June 2013, Bellaire fulfilled its obligations under the Barge Charter by letting the Russell T to Four Rivers.

10. Four Rivers returned the Russell T to Bellaire in June 2013.

11. Upon inspection of the Russell T, Bellaire discovered that Four Rivers had damaged a generator on the Russell T.

12. Bellaire thereafter remitted to Four Rivers invoices for the hire services and the damaged generator pursuant to the terms of the Barge Charter.

13.     By January 2014, Four Rivers owed Bellaire $111,607.92 for the hire services and the damaged generator.

14.     To date, Four Rivers has failed and refused to pay Bellaire the amounts owed pursuant to the Barge Charter.

**B.      Bellaire's Provides Repairs and Documentation Services to GraeStone's Vessels**

15.     In late June/early June 2013, GraeStone delivered the barge HOW-10 to Bellaire's facility along the Ohio River.

16.     Upon information and belief, GraeStone was and is the legal and/or beneficial owner of the HOW-10.

17.     The HOW-10 was secured in Bellaire's fleet on or about June 23, 2013.

18.     Bellaire thereafter pumped out all hull internal voids and tanks on the HOW-10 to prevent the barge from sinking and to preserve its value while in Bellaire's fleet.

19.     Bellaire subsequently invoiced GraeStone for the fleeting and pumping services it provided to the HOW-10, which services totaled $72,930.00 as of this writing.

20.     To date, GraeStone has failed and refused to pay the fleeting and pumping charges that Bellaire provided to the HOW-10.

21.     In August 2013, GraeStone delivered the tank barge EBL-76 to Bellaire's facility along the Ohio River.

22.     Upon information and belief, GraeStone was and is the legal and/or beneficial owner of the EBL-76.

23.     Bellaire added the EBL-76 to its fleet pursuant to its oral agreement with GraeStone that Bellaire would provide certain repair and documentation services to the EBL-76 in consideration of GraeStone's payment for such services.

24. Between August 2013 and April 2014, Bellaire fleeted the EBL-76 and provided the repair and documentation services as per its agreement with GraeStone.

25. Bellaire thereafter invoiced GraeStone for the repair and documentation services provided to the EBL-76, which services totaled $54,391.46 as of June 6, 2014.

26. GraeStone has failed and refused to pay the fleeting charges that Bellaire provided to the EBL-76.

27. To date, a balance of $15,405.00 remains due and owing to Bellaire for the fleeting services it provided to the EBL-76.

## COUNT I—BREACH OF CHARTER PARTY

### Bellaire Harbor Service, LLC v. Four Rivers Towing, LLC

28. The averments of paragraphs 1 through 27 above are incorporated by reference.

29. The November 17, 2012 Barge Charter constitutes a valid and enforceable maritime contract/charter party pursuant to which Bellaire agreed to let and Four Rivers agreed to charter the merchant vessel M/V Russell T.

30. Bellaire fulfilled its obligations under the Barge Charter by letting the Russell T to Four Rivers.

31. To date, Four Rivers has failed and refused to pay Bellaire the amounts owed pursuant to the Barge Charter.

32. Four Rivers' failure and refusal to pay Bellaire constitutes a material breach of the terms and conditions of the Barge Charter.

33. To date, a balance of $111,607.92 remains due and owing on Four Rivers' account with Bellaire under the Barge Charter.

WHEREFORE, Plaintiff Bellaire Harbor Service, LLC respectfully requests that judgment be entered in its favor and against Defendant Four Rivers Towing, LLC in an amount in excess of $75,000.00.

## COUNT II—BREACH OF CONTRACT

### Bellaire Harbor Service, LLC v. GraeStone Logistics LLC

34. The averments of paragraphs 1 through 33 above are incorporated by reference.

35. Bellaire and GraeStone entered into a valid and enforceable oral maritime vessel repair contract whereby Bellaire agreed to provide repair and documentation services to GraeStone's vessel, the tank barge EBL-76, in consideration of GraeStone's payment for such services.

36. Bellaire added the EBL-76 to its fleet and provided the repair and documentation services in fulfillment of its obligations under the parties' oral agreement.

37. To date, GraeStone has failed and refused to pay Bellaire in full for the services that Bellaire provided to GraeStone's vessel, the tank barge EBL-76.

38. To date, a balance of more than $15,000.00 remains due and owing on GraeStone's account with Bellaire under the parties' oral agreement with respect to the EBL-76.

39. Neither GraeStone nor the EBL-76 may be "found" within this District for purposes of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

40. Bellaire is informed that GraeStone has tangible property, namely the merchant vessel the M/V J. W. Herron, within this District and subject to the jurisdiction of this Court.

WHEREFORE, Plaintiff Bellaire Harbor Service, LLC respectfully requests the following relief: (1) attachment of the merchant vessel the M/V J. W. Herron pursuant to Rules

B and E of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; and (2) such other and further relief as the Court deems just and proper.

## COUNT III—UNJUST ENRICHMENT

### Bellaire Harbor Service, LLC v. GraeStone Logistics LLC

41. The averments of paragraphs 1 through 40 above are incorporated by reference.

42. Bellaire conferred a benefit upon GraeStone by providing the fleeting and pumping services with respect to the HOW-10 barge, which services totaled $72,930 as of this writing.

43. GraeStone has appreciated and retained the benefits of those services, which services have prevented the barge from sinking and preserved its value while it is in Bellaire's fleet.

44. GraeStone has not paid Bellaire for those benefits.

45. The circumstances under which GraeStone has appreciated and retained those benefits make it unjust for Bellaire not to be paid for those services.

46. As a direct and proximate result of GraeStone's retention of those benefits without payment therefor, Bellaire has suffered damages in the amount of $72,930.00.

WHEREFORE, Plaintiff Bellaire Harbor Service, LLC respectfully requests the following relief: (1) attachment of the merchant vessel the M/V J. W. Herron pursuant to Rules B and E of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; and (2) such other and further relief as the Court deems just and proper.

Respectfully submitted,

METZ LEWIS BRODMAN MUST O'KEEFE LLC

Date:  October 1, 2014        By:    s/ Justin T. Barron
                                     Justin T. Barron
                                     PA I.D. No. 200394
                                     *Pro Hac Vice* application pending
                                     535 Smithfield Street, Suite 800
                                     Pittsburgh, PA 15222
                                     (412) 918-1100

                                     and

                                     GOMPERS, MCCARTHY & MCCLURE

                              By:    s/ John E. Gompers
                                     John E. Gompers
                                     W. Va. Bar I.D. No. 1418
                                     Victorian Law Center
                                     60 Fourteenth Street
                                     Wheeling, WV 26003

**Exhibit "A"**

# Barge Charter

THIS CHARTER PARTY, made and concluded in Belmont County, Ohio, on the __17th__ day of __November, 2012,__ by and between Bellaire Harbor Service, LLC, P.O. Box 29 Bellaire, OH 43906, hereinafter called OWNER, and Four Rivers Towing, LLC, 82 Plantation Pointe, PMB 195, Fairhope, Alabama 36532, hereinafter CHARTERER.

*WITNESSETH*: The OWNER agrees to let and the CHARTERER agrees to hire as set forth hereinafter the following Vessels: __MV Russell T, Official Number 539180.__

## ON CHARTER SURVEY

Surveyors appointed by the parties hereto, or a single Surveyor acceptable to both, shall inspect the said Vessels and prepare a detailed report on the condition thereof. This report shall be attached to this Charter Party and shall be accepted as proof of the condition of the said Vessels at the inception of the Charter, and if the CHARTERER elects to waive such Survey, then he accepts the said Vessels as being fully sea-worthy, staunch, sound and free from faults, fit for the intended service. An inventory shall be prepared listing all equipment, spares, rigging, tools, fuel and other consumables aboard the said Vessels, and a copy shall be attached to this Charter Party. Any shortages shall be reimbursed by the CHARTERER as part of the final accounting.

CHARTERER expressly waives the On Charter Survey: __done by George Keegan__

## INSURANCE

Prior to Delivery, the CHARTERER shall provide to the OWNER a Certificate of Insurance in acceptable form attesting that the CHARTERER has in force the following coverage's:
  a. American Institute Hull Insurance (6/2/77 form) in the amount of __$450,000.00__ which shall be the agreed value for each of the said Vessels. Deductible shall not exceed __$5,000.00__.
  b. Protection and Indemnity Insurance (Form SP-23, 1/56) including collision, tower's liability and crew coverage, without crew warranty clauses, with limits of __$1,000,000.00__ plus __$1,000,000.00__ excess. Deductible shall not exceed __$5,000.00__.
  c. Longshoremen's and Harbor Worker's Compensation, as per statutory requirements, plus state workmen's compensation insurance.
  d. Pollution coverage, per Water Quality Insurance Syndicate OPA & CERCLA forms, with limits of __$1,000,000.00__.
  e. Excess liability __$5,000,000.00__ limit over the above.

The certificate shall include __the OWNER as an additional insured and loss payee__, and shall provide for 30 days notice in the event of cancellation, and include a __blanket waiver of subrogation__.

Proceeds of said Insurance may be used to pay for any loss or damage to the said Vessels during the Charter, but any deficiency or deductible amount shall be made up by the CHARTERER.

Charterer agrees and understands that their insurance coverage's itemized above are primary insurance coverage's in the event of any losses or claims.

Notwithstanding the above, Charterer shall have the right to maintain insurance in accordance with its normal practice; i.e., Charterer may utilize prevailing insurance policies, including deductibles and/or self-insured retentions associated with those policies. If Charterer, in its ordinary course of business, self-insures for any of the risks set forth above, Charterer may self-insure such risks under this agreement.

INITIALS: OWNER _____   CHARTERER _____

Vessel Charter Party-Page 2

**TERM**

The term of the Charter shall be one ~~(1) year and commence~~ *Month to Month* RB 17 on the effective date of this Charter Party and shall continue until and including the day and date of Return. CHARTERER guarantees to pay hire MONTHLY in arrears, notwithstanding earlier Return.

**HIRE**

CHARTERER agrees to pay Hire to the OWNER for the use of the said Vessels at the rate of $550.00 per DAY or part thereof.

Charter Hire shall be paid in advance, with the first payment in the amount of $16,500.00 due in advance of Delivery, and subsequent payments thereafter on the 1st day of each month. Upon Return, unearned Hire will be refunded, after settlement of any repair or cleaning charges.

**DELIVERY**

The said Vessels shall be delivered to the CHARTERER at Mobile, AL not later than 12/1/2012. Delivery costs shall be for the account of CHARTERER.

**SERVICE**

CHARTERER shall manage, operate, maintain and keep in good repair the said Vessels, which shall be employed in lawful trades in full compliance with all statutes and regulations.

**NAVIGATION LIMITS**

The said Vessels shall be navigated Mississippi River system, including GIWW and its navigable tributaries and shall not exceed these limits except with the express written consent of the OWNER.

**SUBCHARTERS**

CHARTERER shall not sub charter or hire out the said Vessels without the express written consent of the OWNER.

**LIENS**

The CHARTERER shall not have any right, power or authority to create, incur, or permit to be imposed upon the said Vessels any liens whatsoever. Should any liens or encumbrances be asserted by any party, CHARTERER shall promptly satisfy or otherwise have them discharged.

**INDEMNITY**

CHARTERER shall indemnify and hold harmless the OWNER from any liability or claims arising out of the possession and use of the said Vessels by the CHARTERER, and shall reimburse the OWNER for any costs or expenses incurred as the consequence of CHARTERER's use, including any litigation costs and/or attorney's fees except either to the extent caused by Owner's acts, omissions, negligence, strict liability or other fault and or/and if caused by latent damages that could not have been reasonably discovered during the On-Charter Survey.

**WAIVER OF SUBROGATION**

CHARTERER waives all rights to recover from **OWNER and its Affiliates** in the event damages are incurred to said VESSELS or to CHARTERER or any third party, which are covered by insurance.

INITIALS: OWNER _RB7F_   CHARTERER _CK_

Vessel Charter Party-Page 3

**REDELIVERY**

The said Vessels shall be returned to the OWNER at the conclusion of the Charter term at Bellaire Harbor Fleet, mile 93.0 Ohio River or as otherwise agreed, in the same good order and condition as when delivered, ordinary wear and tear excepted. All costs of redelivery shall be for the account of the CHARTERER.

**OFF CHARTER SURVEY**

Immediately upon Redelivery, Surveyors appointed by the parties, or one Surveyor acceptable to both, shall make a thorough inspection of the said Vessels and report on its condition, with special attention to any damage or repairs needed. The cost of dry docking for inspection, if required, shall be split by the parties, except that if damage is discovered on the underwater portion of the hull, then the entire cost shall be borne by the CHARTERER.

**REPAIRS**

Any repairs, replacements or cleaning required to restore the Vessels to the pre-Charter condition except for repairs, replacements or cleaning related to reasonable wear and tear, shall be for the account of the CHARTERER, and Hire shall continue to be earned for a reasonable period until repairs are completed and the Vessels is again available for service.

**DEFAULT**

Should the CHARTERER be in default of any of the provisions of this Charter Party, or is involved in bankruptcy proceedings, or makes a general assignment for the benefit of creditors, then the OWNER may, without notice and without prejudice to any other rights it may have, withdraw and retake the said Vessels, wherever it may be found, without process. All costs of repossession and return shall be for the account of the CHARTERER.

*IN WITNESS WHEREOF* the parties hereto have executed this Charter Party as of the day and date first written above.

**OWNER:**  
BELLAIRE HARBOR SERVICE, LLC.

*Robert Harrison*

**Signature**             **Date**

*Owner*      *1-17-12*
**Title**

**Witness**

**CHARTERER:**  
FOUR RIVERS TOWING, LLC

_____  11/17/2012

**Signature**             **Date**

*President*
**Title**

**Witness**

INITIALS: OWNER_____   CHARTERER_____

## VERIFICATION

I, Robert Harrison, certify that I am authorized to make this Verification on behalf of Plaintiff Bellaire Harbor Service, LLC by virtue of my position as its Member. I verify that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief. I verify under penalty of perjury that the foregoing is true and correct.

Date: 9-30-14

Robert Harrison
Member
Bellaire Harbor Service, LLC